Carutiiers, J.,
delivered the opinion of the Court.
Complainant and John Fitzpatrick, defendant’s intestate, were partners for several years in a saw and grist mill. In December, 1858, they made an agreement in the settlement of their affairs, which was reduced to writing. After this, in March, 1854, they made a reference to . arbitrators of all matters in controversy between them, at that time, by whom an award and final settlement was made, which, it is said, was satisfactory, and the parties acquiesced in it. It seems *607 that the difficulty which produced this suit arose out of the construction of the award and settlement, as to their extent and effect.
The settlement of 1853 is signed by the parties and attested by two witnesses, and is thus briefly stated by them: “We find, upon a full settlement, that Earris is indebted to said firm $2,802.81, and that Fitzpatrick is not indebted to said firm. Said Fitzpatrick takes the tracts of land known as the ‘Peter tract,’ and another known as the ‘ Riley tract,’ and said Earris is to have the ‘mill place,’ upon paying Fitzpatrick $1,485.40.”
Each party took possession accordingly. The deeds for all these lands had been made to Fitzpatrick individually; but it is admitted on all hands that they were paid for out of the firm means, and consequently were partnership property.
It seems that the parties were not satisfied with their settlement of 1858, and, in March, 1854, submitted their accounts to four competent friends to review, and finally adjust them. This was done upon a laborious .examination, and the result was, as stated in writing, that Farris, instead of being indebted to the firm $2,802, as supposed in their previous settlement, only owed it $12.62, which was then paid. Upon this award the parties say in writing on the same day: “ We, the undersigned agree to the settlement of which the within is a condensed statement, as a final conclusion of our old partnership. March 5, 1854.”
It is proved that the matter of the division of the land was not brought before these referees, as that was not understood to be in question, having been previously divided by the parties, but only their accounts *608 were in dispute. There can be no doubt but that such was the understanding of the parties; that they were content with the division they had made, but only differed about their partnership dealings and accounts, which alone were submitted to the arbitrators.
Very soon after this, Fitzpatrick instituted his action of ejectment against Farris, upon his legal title. To perpetually enjoin that action, and compel Fitzpatrick to make him a title, under their agreement in writing of December, 1853, as to the division of their partnership lands, this bill was filed.
Can the object and prayer of his bill, upon the facts we have stated, be resisted ? The Chancellor thought not, and so do we.
The objections of the defendant are all untenable:
¡, 1. The .argument is unsound, that, under the statute of frauds, as expounded in the case of Sheid v. Stamps, 2 Sneed, 172, and the authorities there cited, in relation to the necessity of setting forth in the writing the particulars of the contract, would render this writing void. That doctrine does not apply to a case like this. Here the lands belonged to the parties as a firm, and were well described in the deeds, and nothing more was required in a division between themselves, but to designate the tracts assigned to each, by such terms as would be well understood, or the general appellations by which they were known. The “Peter tract,” the “Riley tract,” and the “mill tract” were sufficient. If any uncertainty or ambiguity existed, it could be easily explained by parol. If there were two mill tracts, proof would be required to ascertain which was meant. But *609 here there was but the one “ mill tract ” owned bj the firm, and there is no uncertainty.
2. The $1,480 to be paid by Farris was no part of the consideration, nor a condition to the transfer of that tract. It is manifest from the circumstances, that the division of the lands had no connection with that matter. By the mistake of the parties, it was then supposed that Farris was indebted to the firm $2,800,. to the half of which Fitzpatrick was entitled, and that was stated in connection with the partition of their lands; and it may be that the latter intended, in this way, to secure a lien upon the half of the land assigned to the former for its payment, and that would be unobjectionable, if such was the object, and it was properly done. But then it turned out afterwards, by the award of the arbitrators, that this was all a mistake, and that nothing at all was due from Farris to his partner. This, certainly, removed all difficulty on that point, and left the title to the mill tract unincumbered under the previous written agreement.
. It appears that Fitzpatrick was a professional man, of information and experience, and his partner a laborious, uninformed man. They were unequal in this respect, and it is not surprising that such mistakes, as might occur in the case, would, most probably, be against Farris. This may account for the very great difference in the result, when their complicated accounts were placed in the hands of competent men for adjustment.
We think justice has been done by the Chancellor, and affirm his decree making the injunction perpetual and vesting the title to the mill tract in Farris.